**JORDAN, LYNCH & CANCIENNE PLLC**
Michael Cancienne (SBN 24055256)
Joseph W. Golinkin II (SBN 24087596)
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056
Telephone: 713.955.4020

*Counsel for The Auerbach Defendants*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SCOTT M. SEIDEL, TRUSTEE; and GNET ATC, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>HUDSON CLEAN ENERGY ENTERPRISES, LLC; ALLIANCE TEXAS HOLDINGS, LLC; NEIL Z. AUERBACH; JUDITH AUERBACH; AUERBACH PARTNERS, L.P.; JAMES GOODMAN; JAMES FRINZI; GOODMAN INVESTMENT HOLDINGS, LLC; GENESIS NETWORKS, INC.; GENESIS NETWORKS GLOBAL SERVICES, LLC; AUERBACH CHILDREN'S DYNASTY TRUST U/A/D OCTOBER 9, 2012; and AUERBACH FAMILY DYNASTY TRUST U/A/D OCTOBER 9, 2012,<br><br>*Defendants.* | Case No. 22-31641-mvl-7<br><br>(Chapter 7)<br><br>Adversary Proceeding No. 23-03090-mvl |

## THE AUERBACH DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Hudson Clean Energy Enterprises, LLC, Alliance Texas Holdings, LLC, Neil Z. Auerbach, Judith Auerbach, Auerbach Partners, L.P., Auerbach Children's Dynasty Trust u/a/d October 9, 2012, and Auerbach Family Dynasty Trust u/a/d October 9, 2012 (collectively, the "Auerbach Defendants") file this Reply in Support of their Motion to Dismiss the Original Complaint of Plaintiff Scott Seidel, as Trustee of Goodman Networks ("the Trustee").

## DISCUSSION

**A.   The Collapsing Doctrine Does Not Save the Trustee's Fraudulent Transfer Claims against the Auerbach Defendants.**

The Court should dismiss the Trustee's fraudulent transfer claims because those claims are based on a transfer—the so called $5.9 Million Transfer—that never happened. The Trustee admits this, but argues that "common sense" or, alternatively, the so called "collapsing doctrine" authorizes the Court to indulge the fiction that Debtor did not buy the bonds from the Auerbach Defendants at all, but instead simply wired them $5.9 million for "nothing". (ECF 13 at ¶¶13–14.)

Neither the Fifth Circuit nor any state or federal court based in Texas has ever sanctioned the use of the "collapsing doctrine" in a case governed by Texas law.[1] But relevant caselaw also demonstrates that the Trustee is flipping the "collapsing

---

[1] The phrase "collapsing doctrine" only appears in two opinions issued by Texas-based courts (state or federal). *See In re Slamdunk Enterprises, Inc.*, No. 17-60566, 2021 WL 389081, at *14 (Bankr. E.D. Tex. Jan. 29, 2021) ("Though the Defendants seek to utilize similar-sounding terminology from the collapsing doctrine jurisprudence and to conflate it with their "circular contemporaneous transaction," it simply has no application to the evaluation of whether Slamdunk possessed an ownership interest in the funds transferred to it by Tate as a capital contribution"); *In re Wesco Aircraft Holdings, Inc.*, No. 23-90611, 2024 WL 156211, at *20 (Bankr. S.D. Tex. Jan. 14, 2024) (applying New York "collapsing doctrine" jurisprudence in case governed by New York law).

2

doctrine" on its head. In states where this doctrine is used, the collapsing doctrine is nearly always used to evaluate situations where the debtor "buys" an asset that it turns around and transfers to a third party for little to no consideration:

> "Two prongs must be satisfied in order to apply the collapsing doctrine. 'First, the consideration received from the first transferee **must be reconveyed by the debtor for less than fair consideration** or with an actual intent to defraud creditors. If the debtor retains the consideration, or transfers it for valuable consideration, its estate is not unfairly diminished and the initial transfer is not fraudulent. Second, the initial transferee must have actual or constructive knowledge of the entire scheme that renders the exchange with the debtor fraudulent.'"

*In re Lyondell Chem. Co.*, 567 B.R. 55, 146–47 (Bankr. S.D.N.Y. 2017) (emphasis added) (quoting *Official Comm. of Unsecured Creditors v. JP Morgan Chase Bank, N.A.*, 394 B.R. 721, 731 (Bankr. S.D.N.Y. 2008)).

That is not what happened here. Instead, the Trustee alleges Auerbach and/or Auerbach Partners (he doesn't bother to commit either way) purchased Debtor's distressed bonds from James Goodman for 35 percent of the bonds' face value, then sold those bonds to the Debtor for 53 percent of the bonds' face value. The Trustee takes issue with the structure of the transaction because Auerbach structured the deal so that he received and could sell the bonds before his obligation to actually fund his purchase from Goodman came due. But the Trustee cannot ignore what actually happened just because he thinks Goodman should have sold the bonds back to Debtor directly. That the Trustee would even *try* to argue otherwise confirms that he understands the Debtor received reasonably equivalent value as a matter of law. *In re Dual D Health Care Operations, Inc.*, No. 17-41320-ELM, 2021 WL 3083344, at *11 (Bankr. N.D. Tex. July 21, 2021) ("When a debtor makes a payment on antecedent

3

debt and receives a dollar-for-dollar reduction of that debt, . . . the question is easy because the debtor by definition receives reasonably equivalent value—indeed, exactly equivalent value.").

**B.    The Trustee's Civil Conspiracy Claim Against the Auerbach Defendants Contradicts the Complaint's Factual Allegations.**

The Trustee's attempt to save its conspiracy claim is even more misguided. For decades, the Texas Supreme Court has repeatedly warned against imposing informal fiduciary obligations except in cases where the parties have a demonstrated history of special, long-established trust and confidence. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) ("To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit."); *see also Belliveau v. Barco, Inc.*, 987 F.3d 122, 135 (5th Cir. 2021). Thus, under Texas law, "a fiduciary duty will not be lightly created since it imposes extraordinary duties and requires the fiduciary to put the interests of the beneficiary ahead of its own if the need arises." *Melanson v. Navistar, Inc.*, No. 3:13-CV-2018-D, 2014 WL 4375715, at *10 (N.D. Tex. Sept. 4, 2014) (dismissing breach of fiduciary duty case where plaintiff alleged defendant "had a high degree of control and Melanson placed a significant amount of trust and confidence" in defendant).

The Trustee ignores all of this and argues that it can use civil conspiracy to, in effect, impose a fiduciary duty on a counterparty (Auerbach) to look out for the interests of a company (Debtor) with which he had no preexisting business relationship, no alleged relationship of trust or confidence, and *with which Debtor*

4

*was negotiating as a counterparty.* This proposition is plainly ludicrous, and no court in this state has ever sanctioned anything remotely like it.[2]

In any event, the Trustee still does not understand the basics of conspiracy law. In its Response, the Trustee asks the Court to spare its civil conspiracy claim because "Goodman, Frinzi, and Auerbach agreed to hide the true nature of the persons involved and the payments and transactions involved." (ECF 13 ¶41.) But this admission only highlights the claim's deficiencies. As discussed previously, a party cannot recover for civil conspiracy unless they allege that party's alleged overt act proximately caused damage to the plaintiff. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017) ("[F]or conspirators to have individual liability as a result of the conspiracy, the actions agreed to by the conspirators must cause the damages claimed.").

Here, the Trustee's allegations seek to recover the damage Debtor allegedly sustained when it allegedly overpaid for the bonds. (ECF 13 at ¶44.) It does *not* allege the so called "hiding" of the "true nature" of the transactions *caused any damage*. This deficiency is fatal to Count 9 regardless of what label the Trustee attaches to it. *Parker*, 514 S.W.3d at 224.

## C. The Trustee Has No Claim For Unjust Enrichment.

In its Response, the Trustee acknowledges that it cannot recover for unjust enrichment if the sale of the bonds at issue were governed by a valid contract. (ECF

---

[2] The real life implications of allowing such a claim would be endless. In effect, adversarial counterparty's would find themselves joined as defendants in virtually every breach of fiduciary duty case based on the unsatisfactory performance of an executive in an ill-advised business transaction.

5

13 at ¶47.) But the Trustee insists these cases do not apply because "there was no valid contract because Alliance could not contract to sell Bonds it had not paid for and did not own" and because "there was no contract between the Debtor and Auerbach Partners, the recipient of the $5.9 Million Transfer." (*Id.*)

The Trustee appears to be making this up as it goes. Again, *there was no $5.9 Million Transfer* and the Trustee *admits* that Debtor executed and wired the Main Transfer pursuant to the terms of a written agreement. (ECF 1 at ¶1.) The fact that the Trustee claims that Frinzi *should not* have executed the agreement, or that his doing so violated a fiduciary duty, does not change the fact that the transactions are the subject of a written agreement.

## CONCLUSION

Because the Trustee has not stated a claim for relief against the Auerbach Defendants, the Auerbach Defendants respectfully request that the Court dismiss all of the Trustee's claims against them.

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By: *s/ Jeb Golinkin*
    Michael Cancienne
    State Bar No. 24046330
    Joseph ("Jeb") W. Golinkin II
    State Bar No. 24087596
    1980 Post Oak Blvd., Ste. 2300
    Houston, Texas 77056
    713-955-4020 (Telephone)
    713-955-9644 (Fax)
    mcancienne@jlcfirm.com
    jgolinkin@jlcfirm.com

ATTORNEYS FOR THE AUERBACH DEFENDANTS HUDSON CLEAN ENERGY ENTERPRISES, LLC, ALLIANCE TEXAS HOLDINGS, LLC, NEIL Z. AUERBACH, JUDITH AUERBACH, AUERBACH PARTNERS, L.P., AND AUERBACH CHILDREN'S DYNASTY TRUST U/A/D OCTOBER 9, 2012

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of March, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all counsel of record in this case.

    */s/ Jeb Golinkin*
    Joseph W. Golinkin II