**JORDAN, LYNCH & CANCIENNE PLLC**
Michael Cancienne (SBN 24055256)
Joseph W. Golinkin II (SBN 24087596)
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056
Telephone: 713.955.4028

*Counsel for Defendants*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SCOTT M. SEIDEL, TRUSTEE; and GNET ATC, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>18920 N 11th, LLC; JAMES GOODMAN; JAMES FRINZI; STEVEN ZAKHARYAYEV; EVELINA PINKASOVA; PEOPLE NQ INC.; JJC & PEOPLE LLC; GDMN FAMILY INVESTMENTS 2, LLC,<br><br>*Defendants.* | Case No. 22-31641-mvl-7<br><br>(Chapter 7)<br><br><br><br>Adversary Proceeding No. 23-03090-mvl |

## CROSS-DEFENDANTS ALLIANCE TEXAS HOLDINGS, LLC AND NEIL Z. AUERBACH'S MOTION TO DISMISS

Defendants Alliance Texas Holdings, LLC ("Alliance") and Neil Z. Auerbach (together, the "Cross-Defendants") file this Motion to Dismiss Defendant Goodman Investment Holdings, LLC's ("GIH") Crossclaim under Rules 9 and 12 of the Federal Rules of Civil Procedure.

## I. SUMMARY OF ARGUMENT

GIH asserts three fraud-based claims against Cross-Defendants, as well as a breach of contract claim against Alliance. GIH fails to meet the heightened pleading standard associated with its fraud-based claims. In addition, its breach of contract claim is neither legally nor factually viable given GIH's own allegations. Because GIH's claims against the Cross-Defendants are either not sufficiently plead or fail as a matter of law, Cross-Defendants requests that these claims all be dismissed.

## II. BACKGROUND

### A. Factual Background

In January and early February 2022, Defendant James Goodman ("Goodman") and his counsel began negotiating with, *inter alia*, Cross-Defendants relating to the sale of the bonds Goodman held through various companies to Alliance. (*See* Def. GIH's Cross-cl. Against Cross-cl. Defs. Neil Z. Auerbach and Alliance Tex. Holdings, LLC ¶ 9 [hereinafter, "GIH's Cross-cl."].) At the time, Goodman, through Defendant and Cross-claim Plaintiff Goodman Investment Holdings, LLC ("GIH") held $30,146,617 in face value of bonds issued by Debtor (the "GIH Bonds"), out of

2

$48,195,171 that remained outstanding.[1] (GIH Cross-cl. ¶ 8.) The terms of the purchase for the GIH Bonds (the "Alliance Purchase") would be $10,570,912.00, approximately 35.1% of the face value of the GIH Bonds. (*Id.* ¶ 9.) Payment for the GIH Bonds acquired pursuant to the Alliance Purchase was satisfied by Alliance by way of payment to GIH's account. (*See id.* ¶ 11 (suggesting that Alliance paid GIH for the GIH Bonds).)

The same day as the Alliance Purchase, Alliance redeemed the GIH Bonds by way of a sale to Goodman Networks, Inc. (the "Debtor") for $17,032,060 (the "Redemption"). (*See id.* ¶ 13.)

**B.    Procedural History**

On September 6, 2022, various petitioning creditors filed an involuntary petition (the "Petition") against the Debtor in the Bankruptcy Court. The Petition commenced a chapter 7 bankruptcy proceeding and created the Company's chapter 7 estate. The Bankruptcy Court entered an order for relief against the Debtor on December 12, 2022, and appointed Scott M. Seidel as the Trustee of the Company and the Estate.

In connection with the Alliance Purchase and the Redemption, and in connection with various other transactions of the Debtor, on February 1, 2023, the Trustee deposed Goodman. The Trustee subsequently filed this lawsuit on November

---

[1]   James Goodman held bonds through two entities that he controlled: GIH and Genesis. GIH held $30,146,617 (the "GIH Bonds") and Genesis held $1,600,000 (the "Genesis Bonds"). The negotiations concerned both sets of bonds.

3

7, 2023, naming Goodman, GIH, and the Cross-Defendants. (*See id.* ¶ 15 (referencing "a series of lawsuits against Cross-Claimant filed by the Trustee . . . ."[2])

On December 20, 2024, over a year after this lawsuit was filed and more than two years after the Petition, GIH filed this Cross-claim against Cross-Defendants. GIH vaguely asserts four cross-claims: (1) Fraud in Connection with a Stock Transaction; (2) Securities Fraud; (3) Common Law Fraud and Fraudulent Misrepresentation; and (4) Breach of Contract. (*Id.* ¶¶ 16–29.)

### III.   STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a complaint for the "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). In deciding a Rule 12(b)(6) motion, the Court should "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019). The Court "do[es] not,

---

[2]   For clarity, GIH and Goodman are part of several other adversary proceedings related to the Petition that do not involve the Alliance Purchase or Cross-Defendants. This lawsuit is the only adversary proceeding associated with the Petition of which Cross-Defendants are involved.

4

however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Id.* at 336–37 (cleaned up).

Additionally, when a plaintiff's claims are grounded in fraud, the plaintiff must satisfy the heightened pleading requirements of Rule 9(b). Rule 9(b)'s particularity requirement generally demands the complaint identify the "who, what, when, where, and how" of the allegedly fraudulent content. *See United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). Rule 9(b) sets a "high bar." *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 694 (5th Cir. 2020). "Naked assertions devoid of further factual enhancement will not suffice." *Sharifan v. NeoGenis Labs, Inc.*, 622 F. Supp. 3d 478, 488 (S.D. Tex. 2022) (citing *In re Lindsey*, 733 F. App'x 190, 192 (5th Cir. 2018)).

## IV.    DISCUSSION

**A.    GIH's fraud-based claims are insufficiently pleaded.**

GIH has brought three fraud claims in its crossclaim: (1) Fraud in Connection with a Stock Transaction; (2) Securities Fraud; and (3) Common Law Fraud and Fraudulent Misrepresentation. As an initial matter, with respect to the first two claims, the complaint does not identify under what statutory basis GIH is claiming fraud. Secondly, the complaint does not make clear against whom the fraud claims are alleged (whether all are against both Alliance and Auerbach, or whether one or more of the three fraud claims is just against Alliance). And finally, the complaint does not allege facts sufficient to state a fraud claim against either Alliance or Auerbach under Federal Rule of Civil Procedure 9(b), much less to the standard

5

required by the Private Securities Litigation Reform Act ("PSLRA"). GIH's fraud claims are wholly insufficient and should be dismissed.

To state a claim for fraud under the Securities Act—which is presumably what GIH is trying to do with its first two fraud claims—the complaint must not only state facts to meet the standards of Federal Rule of Civil Procedure 9(b) but also the even more rigorous standards of the PSLRA. *See, e.g.*, *Delaware Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 620 F. Supp. 3d 603, 618–19 (S.D. Tex. 2022) ("A plaintiff who asserts securities fraud in violation of § 10(b) and Rule 10b–5 must comply with the pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act.") As the Fifth Circuit explained:

> The PSLRA set high standards for pursuing federal securities fraud suits in order to check frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims. To be sure, the elements of a fraud claim have stayed the same: a material misrepresentation or omission; a defendant with scienter concerning the fraud; reliance; damages; and loss causation. But the PSLRA enhanced the particularity requirements for pleading fraud under Federal Rule of Civil Procedure 9(b) in two ways. First, plaintiffs must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading ...." 15 U.S.C. § 78u–4(b)(1)(B). Second, for "each act or omission alleged" to be false or misleading, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).

*Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 532–33 (5th Cir. 2008) (internal quotations and case citations omitted). Furthermore, group pleading is not allowed in securities fraud suits; the plaintiff must allege facts

6

specific to each individual defendant. *See Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015), *citing Southland*, 365 F.3d at 365 ("[T]he PSLRA requires the plaintiffs to distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud. . . . [W]e do not construe allegations contained in the [second amended complaint] against 'defendants' as a group as properly imputable to any particular defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded.").

GIH's fraud claims do not meet the basic requirements of Rule 9(b), much less the more rigorous requirements of the PSLRA. This is particularly true with respect to the fraud claims against Neil Auerbach. The complaint does not contain even a single allegation regarding any representation Mr. Auerbach made, much less any representation that forms the basis of a fraud claim. In fact, it seems clear from the complaint that GIH is simply trying to hold Mr. Auerbach liable for fraud "as a person who directly or indirectly controlled Alliance." (GIH's Cross-cl. ¶ 20.) This is plainly not sufficient for a claim of fraud. *See Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006) ("Corporate officers are *not* liable for acts solely because they are officers, even where their day-to-day involvement in the corporation is pleaded.") Because the complaint alleges no facts regarding (1) what Mr. Auerbach allegedly said that was fraudulent, (2) when he said it, (3) to whom he said it, or (4) what his state of mind was when he made the statement,[3] any fraud claim against Mr. Auerbach must be dismissed.

---

[3] The required state of mind is an "intent to deceive, manipulate, or defraud" or "severe recklessness." *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 866 (5th Cir. 2003). "A pleading of

7

Furthermore, the allegations against Alliance likewise fail to meet the pleading standards for fraud. It is clear that the gravamen of GIH's allegations against Alliance is that the Alliance Purchase contained language that Alliance agreed that it would not take any action with respect to the GIH Bonds purchased that would be in violation of the Securities Act. But the complaint does not allege what provisions of the Securities Act were violated such that this would be a misrepresentation. In fact, the complaint does not contain reference to a single provision of the Securities Act. Moreover, the complaint does not even purport to claim that Alliance knew it was violating some provision of the Securities Act at the time the parties entered the Bond Purchase Agreement. In short, GIH's fraud claims against Alliance fall well short of the pleading requirements required by Rule 9(b) and the PSLRA.

GIH's fraud claims are wholly inadequate to meet the requisite pleading standards because there is no substance to these claims. Alliance and Neil Auerbach respectfully request, therefore, that the Court dismiss the fraud claims alleged in the crossclaim with prejudice.

**B.     GIH cannot sustain a breach of contract claim based on its allegations.**

GIH also claims Alliance breached the Alliance Purchase by "(1) representing that it had sufficient funds to pay the amounts due under the . . . Agreement or that it did not intend to use its own funds to pay the amounts due under

---

scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company." *Abrams v. Baker Hughes Inc*., 292 F.3d 424, 432 (5th Cir. 2002).

the Bond Agreement; (2) failing to disclose that it would receive from Goodman Networks, Inc. the funds sued to purchase the GIH GNI Bonds from Cross-Claimant; and (3) violating the representation that Alliance was purchasing the GIH GNI Bonds for investment purposes, not for resale." (GIH Cross-cl. ¶ 27.) None of these allegations demonstrate a breach of the Alliance Purchase. Therefore, GIH's breach of contract claim should be dismissed.

To establish breach of contract under Texas law, the plaintiff must show: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009). GIH has not, and cannot, plead the elements for breach of contract.

First, there are no allegations in the Cross-Complaint that GIH performed under the Alliance Purchase. Second, the allegations that purport to establish Cross-Defendants' breach are either conclusory or fail as a matter of law. The first allegation that Cross-Defendants breached by representing "it had sufficient funds to pay the amounts due or that it did not intend to use its own funds to pay the amounts due," (GIH Cross-cl. ¶ 27), is not a breach of any of the alleged terms in the Alliance Purchase. GIH's cross-claim alleges that Cross-Defendants paid for the GIH Bonds, so there were sufficient funds. (*See* GIH Cross-cl. ¶ 12 (noting "funds used to purchase the GIH GNI bonds from Cross-Claimant").) Moreover, any insinuation that the money used by Alliance to pay GIH was not "its own funds" because the funds originally derived from another source and were sent to Alliance is conclusory and

9

ignores the law. Any money transferred to Alliance would have become its property upon completion of the transfer. *See, e.g., Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1277 (11th Cir. 2003) ("Title to funds in a wire transfer passes to the beneficiary bank upon acceptance of a payment order."); *Cosmopolitan Title Agency, LLC v. JP Morgan Chase Bank, N.A.*, No. CV 5:22-286-DCR, 2023 WL 6205413, at *2 (E.D. Ky. Sept. 22, 2023) ("Once PNC accepted the transfer and credited the beneficiary's account, [the transferor's] ownership interest in the transferred funds was extinguished."); *Zeal Glob. Servs. Priv. Ltd. v. SunTrust Bank*, 508 F. Supp. 3d 1303, 1317 (N.D. Ga. 2020) ("[A]s a matter of law, title to the wired funds passed to the beneficiary when the funds transfer was completed.")

GIH's allegation that Alliance's failure to disclose the source of the income constitutes breach also ignores Texas law. "A breach occurs when a party fails or refuses to perform an act that it has expressly promised to perform." *Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*, 369 F. Supp. 2d 848, 855 (E.D. Tex. 2004). Courts have dismissed breach of contract claims premised on a failure to disclose alleged material information. *See, e.g., id.* GIH does not identify any obligation on the part of Cross-Defendants to disclose the source of the funds used to purchase the GIH bonds. As in *Cronus*, GIH's second allegation relating to its breach of contract claim only concerns a failure to disclose, which is not sufficient.

Lastly, GIH attempts to establish Cross-Defendants' alleged breach by relying on language from the Alliance Purchase representing that Alliance was

10

purchasing "for investment purposes, and not with a view to, or for resale . . . ." (GIH Cross-cl. ¶ 10.) However, GIH does not allege that the Cross-Defendants resold the GIH Bonds. Rather, it alleges "after purchasing the GHI GNI Bonds from Cross-Claimant, Alliance **redeemed** the GIH GNI Bonds with Goodman Networks, Inc." (*Id.* ¶ 12 (emphasis added).) The sale of bonds and the redemption of bonds are not the same under the law. *See, e.g.*, 15 U.S. C § 80a-22(a)(2) (discussing rules for timing for a "resale" of a security and the "redemption" of a security). Nowhere does GIH allege that the Alliance Purchase barred Alliance from redeeming the bonds. This allegation of breach therefore fails, as well.

Given GIH's failure to allege facts that support either its own performance or Alliance's breach, this Court should dismiss GIH's breach of contract claim.

## V. CONCLUSION

For the reasons set forth above, GIH's fraud claims ((1) Fraud in Connection with a Stock Transaction; (2) Securities Fraud; and (3) Common Law Fraud and Fraudulent Misrepresentation) should be dismissed with prejudice. None of the allegations are sufficient to pass the high standards set in Rule 9(b) and the PSLRA. Moreover, GIH's breach of contract claim and the allegations in support do not comport with the law and are not sufficient to support the claim. The Cross-Defendants respectfully ask the Court to dismiss these claims and award any such further and other relief to which they may be entitled.

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By: *s/ Jeb Golinkin*
    Michael Cancienne
    State Bar No. 24046330
    Joseph ("Jeb") W. Golinkin II
    State Bar No. 24087596
    1980 Post Oak Blvd., Ste. 2300
    Houston, Texas 77056
    713-955-4020 (Telephone)
    713-955-9644 (Fax)
    mcancienne@jlcfirm.com
    jgolinkin@jlcfirm.com

    ATTORNEYS FOR CROSS-DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of January, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all counsel of record in this case.

    */s/ Jeb Golinkin*
    Joseph W. Golinkin II

12