**JORDAN, LYNCH & CANCIENNE PLLC**
Michael Cancienne (SBN 24055256)
Joseph W. Golinkin II (SBN 24087596)
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056
Telephone: 713.955.4028

*Counsel for Alliance Texas Holdings, LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br>GOODMAN NETWORKS, INC.<br>*Debtor.* | Chapter 7<br>Case No. 22-31641-mvl-7 |
| SCOTT M. SEIDEL, TRUSTEE; and GNET ATC, LLC<br>*Plaintiffs*,<br>v.<br>HUDSON CLEAN ENERGY ENTERPRISES, LLC; AUERBACH PARTNERS TEXAS HOLDINGS, LLC; NEIL Z. AUERBACH; JUDITH AUERBACH; AUERBACH PARTNERS, L.P.; JAMES GOODMAN; JAMES FRINZI; GOODMAN INVESTMENT HOLDINGS, LLC; GENESIS NETWORKS, INC.; GENESIS NETWORKS GLOBAL SERVICES, LLC; AUERBACH CHILDREN'S DYNASTY TRUST U/A/D OCTOBER 9, 2012; and AUERBACH FAMILY DYNASTY TRUST U/A/D OCTOBER 9, 2012,<br>*Defendants*. | Adversary Proceeding No. 23-03090-mvl |

**ALLIANCE TEXAS HOLDINGS, LLC'S MOTION TO DISMISS**

Defendant Alliance Texas Holdings, LLC ("Alliance") files this Motion to Dismiss Defendant Goodman Investment Holdings, LLC's ("GIH") Second Amended Crossclaim under Rule 12 of the Federal Rules of Civil Procedure.

## I. SUMMARY OF ARGUMENT

GIH's breach of contract claim fails because the allegations GIH has made in support of its claim, even if true, do not constitute a breach of the contract at issue. Moreover, GIH has not alleged any actual damages that it has suffered as a result of the alleged breaches. Accordingly, Alliance requests that this crossclaim be dismissed with prejudice, as GIH has already had sufficient opportunities to correct its pleading deficiencies.

## II. BACKGROUND

### A. Factual Background

In January and early February 2022, Defendant James Goodman ("Goodman") and his counsel began negotiating the sale of the bonds Goodman held through various companies to Alliance. (*See* GIH's 2d Am. Cross-cl. Against Alliance Tex. Holdings, LLC, ECF No. 135 ¶¶ 7–8 [hereinafter, "GIH 2d Am. Cross-cl."].) Goodman, through GIH, held $30,146,617 in face value of bonds (the "GIH Bonds") issued by Debtor Goodman Networks, Inc. (the "Debtor"), out of $48,195,171 that remained outstanding.[1] (GIH 2d Am. Cross-cl. ¶ 8.) Under the terms of the purchase agreement (the "Alliance Purchase"), Alliance paid $10,570,912.00 for the GIH Bonds,

---

[1] James Goodman held bonds through two entities that he controlled: GIH and Genesis. GIH held $30,146,617 (the "GIH Bonds") and Genesis held $1,600,000 (the "Genesis Bonds"). The deal concerned both sets of bonds, but only the GIH bonds are at issue in the crossclaim.

approximately 35.1% of their face value.[2] (*Id.* ¶ 8, 11.) After the Alliance Purchase, Alliance redeemed the GIH Bonds to Debtor for $17,032,060 via a completely separate agreement. (*See id.* ¶ 11.) The Debtor was then able to cancel the debt associated with the GIH Bonds.

**B.    Procedural History**

Following the Debtor's bankruptcy, and the appointment of a trustee, the trustee filed this adversary proceeding on November 7, 2023, against Goodman, GIH, Alliance and other entities related to both the Alliance Purchase as well as the subsequent redemption by Alliance to the Debtor. (*See id.* ¶ 12 (referencing "a series of lawsuits against Cross-Claimant filed by the Trustee . . . ."[3])

On December 20, 2024, GIH filed its Original Crossclaim against Neil Auerbach and Alliance. GIH originally asserted four claims: (1) Fraud in Connection with a Stock Transaction; (2) Securities Fraud; (3) Common Law Fraud and Fraudulent Misrepresentation; and (4) Breach of Contract. (GIH's Original Cross-cl., ECF No. 85 ¶¶ 16–29.) GIH has since amended it crossclaim two more times, dropping Neil Auerbach and all its fraud- and securities-based claims. On March 17, 2025, after Neil Auerbach and Alliance's motion to dismiss the Original Crossclaim was granted without prejudice, GIH filed the Second Amended Crossclaim solely

---

[2]    The Alliance Purchase is attached to the crossclaim and therefore part of the pleadings. As such, it is appropriate to consider the Alliance Purchase in this motion. *See Stennett v. Premier Rehab., LLC*, 479 F. App'x 631, 634 (5th Cir. 2012) (noting that the courts may consider the complaint and its attachments when considering a motion to dismiss).

[3]    For clarity, GIH and Goodman are part of several other adversary proceedings that do not involve the Alliance Purchase or Alliance. This lawsuit is the only adversary proceeding in which Alliance is a party.

3

against Alliance for breach of contract. (*See generally* GIH 2d Am. Cross-cl.) Despite three attempts at pleading, GIH's breach of contract claim against Alliance is still deficient.

### III.  STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a complaint for the "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). In deciding a Rule 12(b)(6) motion, the Court should "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019). The Court "do[es] not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Id.* at 336–37 (cleaned up).

4

## IV. DISCUSSION

GIH cannot sustain a breach of contract claim based on its allegations, as it does not allege any actual breach of the Alliance Purchase, and it has not alleged any damages.

### A. GIH has not alleged any breach of the Alliance Purchase.

GIH claims Alliance breached the Alliance Purchase by "(1) violating the representation that Alliance was purchasing the GIH . . . Bonds for investment purposes, (2) violating the representation that Alliance was acting for its own account, and (3) violating the representation that Alliance was not receiving any compensation or fees for the transaction." (GIH 2d Am. Cross-cl. ¶ 17.) None of the factual assertions in support of these alleged "violations," even if true, constitute a breach of the Alliance Purchase, and GIH's arguments rely on misrepresentations of the plain language of the agreement. Therefore, GIH's breach of contract claim should be dismissed.

To establish breach of contract under Texas law, the plaintiff must show: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009). GIH has not, and cannot, plead the elements for breach of contract.

   1. *Alliance's redemption of the GIH Bonds is not a breach of the Alliance Purchase.*

GIH attempts to claim that Alliance breached the Alliance Purchase by redeeming the bonds to Debtor after representing that it was making the purchase

5

"for investment purposes." (*See* GIH 2d Am. Cross-cl. ¶ 17.) These allegations cannot sustain an alleged breach, particularly when the provision GIH cites is viewed in its entirety.

In the Alliance Purchase, Alliance represented that it was "acquiring the Purchased [GIH] Bonds solely for [Alliance]'s own beneficial account, for investment purposes, and not with a view to, or for resale in connection with, any Distribution of the Purchased GNI Bonds. . . . 'Distribution' has the meaning given to it under the Rules and Regulations promulgated under the Securities Act." (GIH 2d Am. Cross-Cl., Ex. A at 5(b)(viii).) "Distribution" under the Securities Act generally refers to the "'intent' to resell the securities to the public at the time of the purchase." *See Coggins v. Camber Energy Inc.*, 693 F. Supp. 3d 736, 753 (S.D. Tex. 2023) (discussing the meaning and scienter required by the use of the term "distribution" within the context of the sale of securities). Based on the plain language of this provision, redeeming the bonds with the actual holder of the debt, here the Debtor, would not constitute a breach. In fact, it has long been recognized that "bonds are generally subject to redemption by the issuer prior to their maturity." *Hanover Bank v. C.I.R.*, 369 U.S. 672, 677 (1962). Therefore, to say that redeeming the GIH bonds does not constitute an "investment purpose" belies the very purpose of purchasing bonds. Such allegations are not sufficient to establish any breach by Alliance.

2. *GIH's allegations that Alliance violated the "acting for its own account" provision of the Alliance Purchase misconstrues the agreement and is devoid of factual support.*

GIH attempts to argue that Alliance breached a provision of the Alliance Purchase that states that Alliance was "acting for its own account". There are two

6

fatal flaws with this argument: (1) that GIH doesn't allege any facts regarding how Alliance breached this provision, and (2) GIH's argument is based on a misrepresentation of the provision and its plain and unambiguous intent.

The provision in the Alliance Purchase at issue is a representation, made by both parties, that states: "the other party is not acting as a broker, agent or fiduciary for, or an adviser to it in respect of the transactions contemplated by this Agreement and each party is acting for its own account and it has made its own independent decision to enter into this Agreement." (GIH 2d Am. Cross-Cl., Ex. A at 5(a)(iv).) As an initial matter, while GIH claims a breach of this provision, it does not allege any other person or entity on whose behalf Alliance was acting. GIH merely alleges, "On information and belief, Alliance was not acting for its own account." (GIH 2d Am. Cross-cl. ¶ 18.) This is conclusory and is not sufficient under a Rule 12(b)(6) analysis. *See In re Superior Air Parts, Inc.*, 486 B.R. 728, 741 (Bankr. N.D. Tex. 2012) (internal citations omitted) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, . . . and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.")

Moreover, GIH's argument is based on a misconstruction of the Alliance Purchase. The representation, when read in full, is plainly noting that GIH and Alliance, respectively, are not acting on behalf of each other and establishes an arms-length transaction. *See 25th St. Grp Apartments #1, LLC v. Bremer Bank, N.A.*, No. 3:20-cv-167, 2022 WL 2753493, at *3 (D. N.D. July 14, 2022) (discussing this provision

7

in the context of whether a fiduciary existed between the contracting parties); *King v. Deutsche Bank AG*, Civ. A. No. 04-1029-HU, 2005 WL 8177092, at *3 (D. Or. Sept. 12, 2005) (discussing a similar provision in the context of reliance between the parties). The crossclaim contains no allegation that Alliance was acting on behalf of GIH or that it had some relationship with GIH, and therefore does not set forth facts to support a claim for breach of this provision. In short, there are no facts to support a claim for breach of contract based on this provision, and this claim should be dismissed.

      3.    *GIH alleges no facts to support a claim that Alliance received an impermissible fee under the Alliance Purchase.*

Lastly, the Alliance Purchase provides, "Neither party is receiving any compensation or fees in respect of the specific transactions contemplated in this Agreement[.]" (GIH 2d Am. Cross-cl., Ex. A at 5(a)(v).) GIH claims that Alliance breached this representation by receiving a "$5.9 million fee when it redeemed the bonds against the Debtor." (*Id.* ¶ 18.) The only transaction addressed by the Alliance Purchase is the sale of the GIH Bonds (and Genesis Bonds) *to* Alliance, not Alliance's subsequent redemption of the GIH Bonds. As discussed above, nothing in the Alliance Purchase barred Alliance from redeeming the GIH Bonds after Alliance purchased them from GIH. There is no allegation that Alliance received any fee or other compensation as part of the Alliance Purchase. GIH cannot therefore rely on a completely separate transaction, to which it was not a party and that was never "contemplated in the [Alliance Purchase] Agreement" to attempt to manufacture some breach by Alliance.

8

GIH acknowledges that "after purchasing the GHI GNI Bonds from Cross-Claimant, Alliance **redeemed** the GIH GNI Bonds with Goodman Networks, Inc." (*Id.* ¶ 11 (emphasis added).) The sale of bonds and the redemption of bonds are not the same under the law. *See, e.g.*, 15 U.S. C § 80a-22(a)(2) (discussing rules for timing for a "resale" of a security and the "redemption" of a security). Nowhere does GIH allege that the Alliance Purchase barred Alliance from redeeming the bonds.

Alliance acted within the confines of the Alliance Purchase and did not breach any of the provisions identified by GIH. Given GIH's failure to allege facts that support Alliance's breach, this Court should dismiss GIH's breach of contract claim.

**B.     GIH's alleged damages are speculative, contingent, or conjectural.**

In addition to its failure to plead a breach of the Alliance Purchase, GIH has not actually identified any cognizable damages related to its alleged breach. GIH claims that had Alliance not allegedly breached the agreement, "GIH would not be subject to litigation in this adversary proceeding" and "GIH would not be exposed to **potential liability** for the $5.9 million." (GIH 2d Am. Cross-cl. ¶¶ 19–20 (emphasis added).) Nowhere has GIH actually established that it has suffered any actual or other damages that were directly attributable to Alliance's alleged breach. Such "potential" or "significant risk of a damages claim" alleged by GIH is not sufficient to support a breach of contract claim.

"A party may not recover damages for breach of contract if those damages are remote, contingent, speculative, or conjectural." *Occidental Petroleum*

*Corp. v. Wells Fargo Bank, N.A.*, 117 4th 628, 641 (5th Cir. 2024). The "potential liability" that GIH claims may lead to it suffering damages is contingent upon the Trustee establishing its fraudulent transfer claims. GIH does not allege that it has suffered any damages from Alliance's alleged breach, other than being "subject to litigation." (*Id.* ¶ 19.) Absent further elaboration, or more concrete damages, GIH cannot sustain a breach of contract claim against Alliance.

## V. CONCLUSION

For the reasons set forth above, GIH's breach of contract claim and the allegations in support do not comport with the law and are not sufficient to support the claim. Alliance respectfully asks the Court to dismiss GIH's breach of contract claim and award any such further and other relief to which it may be entitled.

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By: *s/ Jeb Golinkin*
 Michael Cancienne
 State Bar No. 24046330
 Joseph ("Jeb") W. Golinkin II
 State Bar No. 24087596
 1980 Post Oak Blvd., Ste. 2300
 Houston, Texas 77056
 713-955-4020 (Telephone)
 713-955-9644 (Fax)
 mcancienne@jlcfirm.com
 jgolinkin@jlcfirm.com

 ATTORNEYS FOR ALLIANCE TEXAS
 HOLDINGS, LLC

10

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 31st day of March, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all counsel of record in this case.

                                    */s/ Jeb Golinkin*
                                    Joseph W. Golinkin II