

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed August 19, 2025**

_____
**United States Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **GOODMAN NETWORKS, INC.** | § | **CASE NO. 22-31641-MVL7** |
| | § | **(CHAPTER 7)** |
| Debtor. | § | |
| | § | |
| **SCOTT M. SEIDEL, TRUSTEE,** *et al.*, | § | |
| | § | **ADVERSARY NO. 23-3090-MVL** |
| Plaintiffs, | § | |
| v. | § | |
| **HUDSON CLEAN ENERGY ENTERPRISES, LLC,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION TO DISTRICT COURT**
**GRANTING CROSS-DEFENDANT'S MOTION TO DISMISS CROSSCLAIM**

1

I. INTRODUCTION.

Cross-Claimant Goodman Investment Holdings, LLC ("**GIH**" or the "**Cross-Claimant**") filed its *Second Amended Crossclaim Against Alliance Texas Holdings, LLC* (the "**Crossclaim**") on March 17, 2025.[1] ECF No. 135. Cross-Defendant Alliance Texas Holdings, LLC ("**Alliance**" or the "**Cross-Defendant**") filed its *Motion to Dismiss the Crossclaim* (the "**Motion to Dismiss**") on March 31, 2025. ECF No. 141. Additionally, GIH filed a *Response to Cross-Defendant Alliance Texas Holdings, LLC's Motion to Dismiss* (the "**Response**") on April 21, 2025. ECF No. 142. Finally, Alliance filed a *Reply in Support of its Motion to Dismiss* (the "**Reply**") on May 5, 2025. ECF No. 143.

The Bankruptcy Court held a hearing with regard to the Motion to Dismiss on July 2, 2025.[2] Counsel for GIH and Alliance appeared. After consideration of the pleadings and the arguments presented, the Bankruptcy Court submits the following Report and Recommendation[3] to the United States District Court to GRANT the Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "**Rules**") and incorporated into this Adversary Proceeding through Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")[4].

---

[1] All ECF No. references are herein made with respect to the docket in Adversary Proceeding No. 23-3090-MVL.
[2] For the purposes of this report and recommendation, all capitalized references to the Bankruptcy Court (the "**Court**" or the "**Bankruptcy Court**") are made in reference to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. Likewise, all capitalized references to the District Court (the "**District Court**") are made in reference to the United States District Court for the Northern District of Texas, Dallas Division. All capitalized references to the Main Bankruptcy Case (the "**Bankruptcy Case**") are made in reference to Case No. 22-31641-MVL7 (Bankr. N.D. Tex. 2022). All capitalized references to the Adversary Proceeding (the "**Adversary Proceeding**") are made in reference to Adv. Pro. No. 23-3090-MVL (Bankr. N.D. Tex.).
[3] The Court notes that both GIH and Alliance were parties to respective Motions to Withdraw the Reference [ECF Nos. 60, 63], to which the Court issued separate Report and Recommendations to the District Court [ECF Nos. 102, 103], recommending withdrawal of the reference as to the Adversary Proceeding once it was deemed trial-ready. Accordingly, the District Court accepted the Court's Report and Recommendations as to both motions, further stipulating that the Bankruptcy Court shall preside over all pretrial matters.
[4] Pursuant to 28 U.S.C. 157(c), the Court is subject to *de novo* review and any final order entered by the District Court.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The dispute before the Court revolves entirely around an alleged breach of contract by Alliance. As set forth in the Crossclaim, in either late 2021 or early 2022, James E. Goodman ("**J.E. Goodman**")—the owner of GIH—was contacted by James Frinzi ("**Frinzi**")—the former CEO of Goodman Networks, Inc. (the "**Debtor**" or "**GNI**")—regarding those certain 8.000% Senior Secured Notes (the "**GNI Bonds**"). ECF No. 135 at 2–3. Per the Crossclaim, the GNI Bonds were initially issued by the Debtor, held and owned by GIH in face amount of $30,146,617 as of February 2022, and were set to mature in 2022. *Id.*

GIH alleges that Frinzi approached J.E. Goodman, informing him that Frinzi had managed to find an interested third-party looking to purchase the GNI Bonds held by GIH—namely, Neil Z. Auerbach ("**Auerbach**"). *Id.* at 3. GIH further alleges that, despite Frinzi's familiarity with Auerbach, J.E. Goodman "had never done business with Auerbach and has not done business with him since" the transaction in question. *Id.* Regardless, on February 3, 2022, GIH, alongside Genesis Networks, Inc. (a related entity controlled by J.E. Goodman, which also held and owned GNI Bonds), entered into a Bond Purchase Agreement (the "**Bond Agreement**") to sell their respective interests in the GNI Bonds to Alliance, an entity controlled by Auerbach. *Id.*; *see also* ECF No. 135-1 at 1. Per the Bond Agreement, GIH, specifically, sold its GNI Bonds to Alliance for a purchase price of $10,570,912. ECF No. 135 at 3.

Central to the dispute are the representations made by Alliance relative to the Bond Agreement. GIH focuses on three primary representations made by Alliance: (1) Alliance was "acquiring the Purchased GNI Bonds solely for [its] own beneficial account, for investment purposes, and not with a view to, or for resale in connection with, any Distribution of the Purchased GNI Bonds; (2) Alliance was "acting for its own account," thereby making its own independent

3

decision to enter into the Bond Agreement; and (3) that Alliance did not receive "any compensation or fees in respect of the specific transactions contemplated in the [Bond] Agreement." *Id.* However, GIH alleges that, following the execution of the Bond Agreement, Alliance breached each of these representations.

According to GIH, after purchasing the GNI Bonds, Alliance redeemed the bonds with the Debtor on the same day it purchased the bonds from GIH. *Id.* at 4–5. GIH further alleges that it was Auerbach's intention all along to facilitate an immediate redemption of the bonds with the Debtor without GIH's knowledge. *Id.* at 3–5. More specifically, GIH alleges that Auerbach planned, prior to executing the Bond Agreement on Alliance's behalf, to immediately redeem the bonds with the Debtor, thereby allowing Alliance to charge a $5.9 million "premium" for facilitating the tripartite transaction. *Id.* at 3–4.

GIH contends that Alliance's facilitation of this transaction on Auerbach's behalf is the inception of Alliance's breach of the Bond Agreement. According to GIH, Alliance breached the above-mentioned representations made in the Bond Agreement by purchasing the bonds for non-investment purposes (redemption), on Auerbach's account rather than its own, and received a $5.9 million fee in exchange for its efforts. *Id.* at 5–6. Furthermore, GIH alleges that Alliance's breach of contract was to GIH's detriment, proximately causing GIH damages in the form of exposure to potential liability for, among other things, fraudulent transfer claims brought by Scott M. Seidel—the duly-appointed Chapter 7 Trustee (the "**Trustee**")—in the underlying Adversary Proceeding. *Id.* at 6.

Alliance, unsurprisingly, contests GIH's recounting and interpretation of the events that transpired relative to the Bond Agreement. As distilled in its Motion to Dismiss and reflected in its arguments at the hearing on the Motion to Dismiss, Alliance contends that the Crossclaim

4

should be dismissed for four distinct reasons. First, Alliance contends that its redemption of the GNI Bonds does not plausibly establish a breach of its representation that its purchase was solely for "investment purposes." ECF No. 141 at 6. In other words, based on the plain language of the Bond Agreement, redeeming the bonds was not a breach of contract because the agreement only precluded "resale" in connection with a "Distribution."[5] *Id.*

Second, Alliance contends that GIH's allegation that Alliance breached the representation that it was "acting for its own account" is not plausible because: (1) GIH does not allege any facts as to how Alliance breached the provision; and (2) GIH's argument is based on a misinterpretation of the provision itself. *Id.* at 6–7. Here, Alliance argues that the correct interpretation of the provision is that each party was simply representing that it was not entering into the Bond Agreement for the benefit of the other, thereby establishing an arm's-length transaction. *Id.* at 7. Further, Alliance argues that GIH's allegation with regard to the breach of such provision is "conclusory" and insufficient. *Id.*

Third, Alliance contends that GIH has not plausibly alleged any facts to support that Alliance received an "impermissible fee" by virtue of the $5.9 million delta between the purchase price and the redemption of the GNI Bonds. *Id.* at 8. Alliance argues that the alleged $5.9 million "fee" was instead a profit secured through an entirely separate transaction from the Bond Agreement—its agreement with the Debtor to redeem the bonds. *Id.* Put another way, two transactions took place—the Bond Agreement followed by the redemption—and the proceeds Alliance received by redeeming the bonds could not, and were not, part and parcel of the terms of the already-completed Bond Agreement. *Id.* at 8–9.

---

[5] As noted in the Motion to Dismiss, Alliance argues that a "Distribution" under the Securities Act generally refers to an "intent to resell the securities to the public" at the time of purchase. *See* ECF No. 141 at 6 (quoting *Coggins v. Camber En. Inc.*, 693 F. Supp.3d 736, 753 (S.D. Tex. 2023)) (internal quotations omitted).

Finally, Alliance argues that GIH has also failed to plead plausible damages. Alliance contends that GIH has only alleged speculative and conjectural damages in the form of GIH's "potential liability" for the $5.9 million relative to the Trustee's fraudulent transfer claims alleged in his Complaint. *Id.* at 9–10.

In its Response, GIH reinforces many of its arguments raised in the Crossclaim, making particular note of the condensed timeline between Alliance's purchase of the GNI Bonds and its subsequent redemption of the bonds with the Debtor on the same day. ECF No. 142 at 3. GIH contends that, despite Alliance's position that redemption of the bonds was a valid investment purpose, the extraordinarily condensed timeline and the fact that Alliance received a "50% return on investment" with an allegedly insolvent Debtor underscore how GIH has plausibly established a breach of the Bond Agreement. *Id.* at 4.

Furthermore, GIH notes that an allegedly undisclosed funds flow memorandum (the "**Second Funds Flow Memorandum**") illustrates how the $5.9 million was predetermined by Auerbach and Alliance to go to Auerbach Partners, LP ("**Auerbach Partners**") following the redemption of the bonds, showing that Alliance had never been acting for its "own account" in executing the Bond Agreement. *Id.*

Finally, GIH rebuts Alliance's contention that its damages are too speculative by not only reiterating its potential liability to the Trustee as a basis for damages, but also noting that the Bond Agreement contains an indemnification provision. *Id.* at 5–6. The Bond Agreement expressly states that the purchaser (Alliance) agrees to indemnify the seller (GIH) "from and against any Losses to which any Seller Indemnitees may become subject, *whether commenced or threatened*," insofar as those losses arise out of or are based upon a breach of the purchaser's representations contained in the Bond Agreement. *Id.* at 6 (emphasis in original). Given the alleged breach by

6

Alliance, GIH argues that this indemnity provision is sufficient to establish damages for purposes of a motion to dismiss.

### III. STANDARD OF REVIEW.

Rule 12(b)(6), incorporated by Bankruptcy Rule 7012(b), authorizes dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986)). However, the Court need not "strain to find inferences favorable to the plaintiffs." *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations, which, if accepted as true, state a plausible cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim satisfies the plausibility test 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Reagor-Dykes Motors, LP*, No. 18-50214-RLJ, 2021 WL 2546664, at *1 (Bankr. N.D. Tex. June 3, 2022) (Jones, J.). This plausibility requirement sits somewhere between possible and probable, and is satisfied where the plaintiff's pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678

Although the complaint is not required to provide detailed factual allegations, it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. However, numerous courts within the Fifth

Circuit have reiterated that because "a complaint must be liberally construed in favor of the plaintiff, a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted." *Reagor-Dykes*, 2021 WL 2546664 at *2 (citation omitted). In reviewing the motion, the court looks to the pleadings, alongside any documents attached or incorporated into the complaint by reference. *See Mirant Corp. v. Southern Co.*, 337 B.R. 107, 115 (N.D. Tex. 2006).

IV. **D**ISCUSSION.

Under Texas law, to maintain a breach of contract claim, a party must plausibly allege: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC* 490 F.3d 380, 387 (5th Cir. 2007). At its core, GIH's argument with regard to its breach of contract claim is as follows: if the Court (1) takes the allegations of Alliance's various breaches as true; (2) matches the alleged breaches to their corresponding provisions in the Bond Agreement; and (3) considers the Bond Agreement in its entirety, then there is a plausible breach of contract claim. Likewise, GIH argues that if the Court considers the surrounding context that preceded the Bond Agreement, including the allegations made in the Trustee's Amended Complaint (the "**Complaint**"), incorporated via footnotes in the Crossclaim, then GIH has plausibly alleged a breach of contract. *See* ECF No. 95.

The incorporation of the Trustee's allegations is essential to GIH's claim. The Crossclaim includes several footnotes that incorporate allegations made by the Trustee in the Complaint relative to the timeline of events surrounding the redemption of the GNI Bonds, as well as the existence of the Second Funds Flow Memorandum. *See* ECF No. 135 at 4, n. 2–4. GIH argues that this incorporation alters the way the Court should view the provisions of the Bond Agreement, and colors Alliance's actions and motives for executing the Bond Agreement in a much different light.

8

Evaluating GIH's argument on this point, however, involves more than just the merits of its argument; a conglomerate of Rules—specifically, Rules 8, 10, and 13—is essential to the Court's recommendation. Rule 8 and the case law interpreting the same are relatively straightforward, in that Rule 8 requires that a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Likewise, this statement "must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Langley v. Metro. Life Ins. Co. et al.*, Civ. Action No. 2:24-CV-2832-S, ECF No. 27, at 3 (N.D. Tex. July 2, 2025) (quoting *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 438 (5th Cir. 2004)) (internal quotations omitted).

Rule 13(g) specifies that:

A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action.

Fed. R. Civ. P. 13(g).

Rule 10(c) provides that a statement in a pleading "may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Fed. R. Civ. P. 10(c). Taken together, a crossclaim brought under Rule 13(g): (1) must adhere to the notice pleading requirements under Rule 8(a)(2); (2) may be subject to a Rule 12(b)(6) motion to dismiss for failure to state a plausible claim under Rule 8(a); and (3) may permissibly incorporate by reference a prior pleading in the same case. *See generally Am. Home Assurance Co. v. Senaduana Freight Forwarders, Inc.*, Case No. 08-20871, 2009 WL 10698434, at *2 (S.D. Fla. Feb. 8, 2009) (evaluating the factual allegations underlying a crossclaim using Rules 8 and 10(c) for purposes of a 12(b)(6) motion).

The Court acknowledges the broad language of Rule 10(c), in that a statement in a pleading may be adopted reference in "*any* other pleading or motion." Fed. R. Civ. P. 10(c) (emphasis

added). This forgiving standard comports with the liberal construction of Rule 8(a)(2) as well. However, Rule 10(c) is not boundless, and courts have considered whether permitting incorporation by reference would "provide adequate notice as to the incorporating party's claims, defenses, or factual allegations." *E.g., In re Rosenfeld*, 543 B.R. 60, 66 (Bankr. S.D.N.Y. 2015). Put simply, a pleading "must adopt specific portions or all of the earlier pleading 'with a degree of clarity which enables the responding party to ascertain the nature and extent of the incorporation.'" *Gen. Acc. Ins. Co. of Am. V. Fid. & Deposit Co. of Md.*, 589 F. Supp. 1223, 1229 (E.D. Pa. 1984) (quoting *Heintz & Co. v. Provident Tradesmens Bank & Tr. Co.*, 29 F.R.D. 144, 145 (E.D. Pa. 1961)).

Although case law has not diagrammed the specific method of incorporation, "'references to prior allegations must be *direct and explicit*, in order to enable the responding party to ascertain the nature and extent of the incorporation.'" *U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp.2d 422, 461 (E.D.N.Y. 2007) (quoting 5A Wright & Miller, *Federal Practice & Procedure* § 1326 (4th ed.)) (emphasis added). Courts have enumerated the varying circumstances how pleadings might fall below the threshold of "direct and explicit" references under Rule 10(c). *See Heintz*, 29 F.R.D. at 145 (finding that a third-party complaint did not sufficiently incorporate the original complaint because it failed to adequately indicate to what extent the allegations in the original complaint were being incorporated); *General Account*, 598 F. Supp. at 1229 (finding that a party did not sufficiently incorporate a prior pleading by simply attaching the entirety of the prior pleading to the current one); *American Home*, 2009 WL 10698434 at *2–3 (finding that a litigant's attempt to incorporate the factual allegations of the complaint into a crossclaim was insufficient because the party did not identify which specific allegations from the complaint supported the allegations in the crossclaim). For example, in *American Home*, the district court specifically

noted that a response to a 12(b)(6) motion was "not the appropriate vehicle" for a party to interject facts to explain the viability of its crossclaims, and therefore the viability of its attempted references to the original complaint. *American Home*, 2009 WL 10698434 at *3.

The Court believes that the insufficiencies in the Crossclaim share a kinship with those pleadings deemed defective in *American Home* and *Heintz*. *See Heintz*, 29 F.R.D. at 145. The defect in the incorporation of the Complaint by reference is evidenced by looking specifically at the manner with which GIH incorporates the Trustee's allegations.

The Crossclaim contains three footnotes that reference allegations contained in the Complaint: (1) the Trustee's allegations with regard to the existence of the Second Funds Flow Memorandum; (2) the Trustee's allegations with regard to an agency agreement between Alliance and Hudson Clean Energy Enterprises, LLC ("**Hudson**") intended to mask the fact that the Debtor's funds would be used to purchase the GNI Bonds; and (3) an additional reference to the Trustee's allegations that the Second Funds Flow Memorandum was only internally circulated amongst Alliance, Auerbach, and other related parties. *See* ECF No. 135 at 3–4; *see also* ECF No. 95 at ¶¶ 57–59, 63–64.

Although not expressly articulated in the Crossclaim, it is GIH's contention that the incorporated allegations from the Trustee's Complaint expose Alliance's ulterior motives in executing the Bond Agreement and underscore how the representations made by Alliance were false. The Court, however, has several concerns with GIH's attempt to recharacterize its Crossclaim in this manner. First, notwithstanding the Herculean effort the three footnotes make in attempting to push the Crossclaim across the threshold of plausibility, the Court does not find GIH's references to the Complaint via footnotes to be sufficient for Rule 10(c). There is simply nothing direct or explicit about select references to the Complaint—fleshing out what is essentially

the axis of GIH's argument—in the footnotes, especially in terms of providing fair notice to Alliance as to the nature and extent of GIH's incorporation of the allegations in the Trustee's Complaint.

Second, the Court notes that almost all the allegations from the Complaint that GIH references in its Crossclaim were previously <u>denied</u> by GIH as part of Defendants James Goodman's and Goodman Investment Holdings, LLC's *Answer to Trustee's Amended Complaint* (the "**Answer**"). ECF No. 121 at 8–9.[6] Indeed, nothing in Rules 8, 10, or 13 necessarily prevents GIH from taking contradictory positions with respect to the Trustee's allegations. Nevertheless, the Court finds that denying the truth of an allegation in one pleading, only to deploy the alleged truth of that allegation in an opaque manner within the footnotes of a later pleading—especially when that allegation is a crucial component of the later pleading—is insufficient under Rule 10(c).

Having determined that GIH's half-hearted incorporation of the Trustee's allegations as to motive is insufficient, the Court is left with benign, boilerplate provisions of the Bond Agreement and GIH's contentions that its <u>own</u> allegations relative to the provisions amount to a plausible cause of action for breach of contract. Taking GIH's own allegations in the light most favorable to GIH, the Court does not find there to be a plausible cause of action for breach of contract in the Crossclaim.

First, there is no prohibition in the Bond Agreement against redemption, and the Cross-Claimant has brough forth no authority establishing that resale and redemption are <u>equivalent</u>. *See* ECF No. 135-1 at 5 (warranting that Alliance would be purchasing for "investment purposes" without an intent for "resale in connection with, any Distribution of the Purchased GNI Bonds);

---

[6] The Court notes that in the Answer, GIH stated that it lacked sufficient knowledge to admit or deny the allegations in paragraphs 57 through 59 and 64, as well as part of paragraph 63. Per Rule 8(b)(5), a party's statement that it lacks knowledge or information sufficient to form a belief about the truth with regard to an allegation has the effect of a denial. Fed. R. Civ. P. 8(b)(5).

*see also Coggins*, 693 F. Supp.3d at 753 ("*Distribution* in this usage requires 'intent' to resell the securities to the public at the time of purchase.") (emphasis in original).

Second, without building upon inferences from the Trustee's Complaint, there is no plausible claim that Alliance was not acquiring the bonds "for its own account." To be certain, the Crossclaim does not itself contain an allegation of any other person or entity for whom Alliance was acting. Instead, GIH merely alleges that, on information and belief, "Alliance was not acting for its own account." *See* ECF No. 135 at 5. As Alliance rightly points out in the Motion to Dismiss, this allegation, on its face, is conclusory and insufficient under *Twombly*. The Court also agrees with Alliance that GIH's argument is undercut by the plain language of the provision at issue. As other courts have noted, "for its own account" is relatively "unambiguous" as to its scope, and GIH has provided no contrary interpretation that would dissuade the Court from that notion. *E.g., 25th St. Grp. Apartments #1, LLC v. Bremer Bank, Nat'l Ass'n*, Case No. 3:20-cv-167, 2022 WL 2753493, at *16 (D.N.D. July 14, 2022) (finding that a similar "acting for its own account" provision was unambiguous in that it did not support the existence of "separate and distinct" fiduciary obligations). The Court finds that such a provision is merely a plain vanilla representation that the transaction is arm's-length between the two parties, each "for its own account."

Finally, the Cross-Claimant has brought forth no authority for the proposition that the difference between a purchase price and redemption value constitutes "compensation or fees" as provided in Section 5(a)(v) of the Bond Agreement, or why the purchase and redemption transactions should be collapsed without an over-dependence on the inferences from the Trustee's Complaint. Put simply, GIH has provided no reasonable inferences for the Court to find that Alliance's purchase of the bonds and its subsequent redemption with the Debtor constitutes a single, predetermined transaction, thereby transforming the $5.9 million in profit into plausible

"compensation or fees" for Alliance's role in the purchasing of the GNI Bonds. Again, this is a typical, boilerplate representation wherein the party avers that it is not taking a fee on the transaction, ordinarily in the way of a broker's commission.

This Court has said once before "[i]t is one thing for a court to connect the dots where a plaintiff lays the groundwork for plausible inferences throughout its complaint. It is an entirely different thing for a plaintiff to fail to draw the dots altogether and ask the court to do it for them." *In re Goodman Networks, Inc.*, Case No. 22-31641, Adv. No. 24-3037, 2025 WL 73072, at *9 (Bankr. N.D. Tex. Jan. 10, 2025) (Larson, J.). Similarly, there is a notable difference between weaving together a set of plausible inferences into a cause of action, and placing disparate threads in front of the Court and languidly suggesting that, if woven together, the threads amount to a sufficient claim. Here, GIH asks the Court to do the legwork in inferring that a plausible breach of contract exists. Even under Rule 8's broad notice pleading standard, however, the Court cannot endorse such a "reimagining" of the Crossclaim.[7]

### V. RECOMMENDATION.

Based upon the foregoing, the Court recommends that the District Court GRANT the Motion to Dismiss.

### ###END OF REPORT AND RECOMMENDATION###

---

[7] Given the Court's recommendation that the District Court grant the Motion to Dismiss based on the merits of GIH's cause of action, the Court need not reach the issue of whether GIH adequately pleaded damages in the Crossclaim.

14